David Weitman (TXBN 21116200)
Angela Buchanan (TXBN 24059213)
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, Texas  75201
T:  (214) 939-5500
F:  (214) 939-5849
david.weitman@klgates.com
angela.buchanan@klgates.com
*Counsel for Matrix Trust Company and*
*Matrix Settlement & Clearance Services, LLC*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **In re:**<br>**VANTAGE BENEFITS ADMINISTRATORS, INC.,**<br><br>**Debtor,**<br><br>**JEFFREY MIMS, as Chapter 7 Trustee of Vantage Benefits Administrators, Inc.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MATRIX TRUST COMPANY, MATRIX SETTLEMENT & CLEARANCE SERVICES LLC, JEFFREY RICHIE, and WENDY RICHIE,**<br><br>**Defendants.** | **Chapter 7**<br><br>**Case No.: 18-31351-sgj7**<br><br>**Adversary No.: 20-03055-sgj** |

### MATRIX'S UNOPPOSED MOTION TO WITHDRAW THE REFERENCE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE AND
THE HONORABLE STACEY JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

Matrix Trust Company ("Matrix Trust") and Matrix Settlement & Clearance Services, LLC

("MSCS," and with Matrix Trust, "Matrix") move to withdraw the reference of the above-

captioned adversary proceeding (the "Adversary Proceeding") on mandatory and permissive

grounds (this "Motion") under 28 U.S.C. § 157(d) and Local Bankruptcy Rule 5011-1.

1

Per the stipulation of May 20, 2020 between Matrix and the Chapter 7 Trustee Jeffrey H. Mims (the "Trustee") [BK DE 109] (the "Stipulation"), the Trustee supports the relief requested herein.  The Trustee further stipulated and agreed in the Stipulation that (1) all of the claims asserted by the Trustee in his Original Complaint [Adv. DE 1] are non-core claims; (2) all of the Trustee's claims and Matrix's defenses are to be tried by the District Court; and (3) Matrix and the Trustee are entitled to a jury trial on all of the Trustee's claims.  The Trustee and Matrix further agreed in the Stipulation that, should the reference be withdrawn, the Bankruptcy Court should hear only pretrial matters for the Adversary Proceeding.  By this Motion, Matrix does not consent to entry of final judgment by the Bankruptcy Court and asserts its right to a jury trial on all claims.

## ORIGINS OF THE ADVERSARY PROCEEDING

1.	On April 19, 2018, an involuntary petition for Chapter 7 relief was filed against Vantage Benefits Administrators, Inc. ("Vantage" or the "Debtor").  On June 5, 2018, this Court entered an order for relief, and subsequently the United States Trustee appointed the Trustee for the Debtor's estate.

2.	Vantage served as a third-party administrator ("TPA") for a number of retirement plans.  It was controlled by Jeffrey Richie and Wendy Richie (the "Richies"), who respectively served as Vantage's president and vice president and together owned 99% of Vantage's stock. Between 2014 and an FBI raid on Vantage's Dallas headquarters in October 2017, the Richies allegedly used identification information for several participants in its clients' retirement plans to steal money from the participants' individual retirement accounts to use in Vantage's business and for personal expenses.  The Richies have been charged by the United States with various crimes and are set to stand trial at the end of May 2020.  *See generally* Indictment [DE 1], *United States v. Richie*, No. 3:18-CR-540 (N.D. Tex. filed Oct. 23, 2018).

3.      On April 6, 2020—nearly two (2) years after the filing of the involuntary proceeding against Vantage—the Trustee initiated the Adversary Proceeding against Matrix and the Richies.  Matrix was served on April 13, 2020.

4.      The Adversary Proceeding asserts nine (9) non-core claims against Matrix, based on a contract between Matrix and Vantage under which Matrix was to provide, on the instructions of Vantage, certain clearing and custodial services pre-petition to certain Vantage retirement-plan clients under Vantage's administration.  The Vantage-Matrix contract specifically provides that Vantage retains "complete responsibility" for its employees and that Matrix "shall not be liable for undertaking any act on instructions" from Vantage.  Nevertheless, the Trustee alleges that Matrix, by following Vantage's instructions, failed to prevent the Richies' theft of over $14 million from participants in some of the plans for which Vantage served as TPA.  *See, e.g.*, Compl. ¶¶ 30–31. The Trustee's nine claims are for: (1) breach of contract, (2) negligence, (3) gross negligence, (4) breach of the duty of good faith and commercial reasonableness under the UCC, (5) breach of fiduciary duty to non-ERISA plans, (6) aiding and abetting breach of fiduciary duty to non-ERISA plans, and three ERISA claims, for (7) breach of fiduciary duties, (8) engaging in prohibited transactions, and (9) co-fiduciary liability.  The Trustee seeks recovery based on harm sustained by the Debtor's estate and, consequently, by the retirement-plan participants.  Compl. ¶¶ 2–3.

## STANDARD FOR WITHDRAWAL OF THE REFERENCE

5.      Because bankruptcy courts derive their jurisdiction from that of the federal district courts, district courts retain the ability to withdraw the reference of "any case or proceeding" from the bankruptcy courts "in whole or part."  *See* 28 U.S.C. § 157(d); *In re Wood*, 825 F.2d 90, 94–95 (5th Cir. 1987).  Withdrawal of the reference is mandatory if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations

or activities affecting interstate commerce." 28 U.S.C. § 157(d). District courts may also withdraw

the reference for "cause" based on the factors for permissive withdrawal enumerated by the Fifth

Circuit in *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir.

1985): (1) whether the underlying lawsuit is core or non-core; (2) whether or not there has been a

jury demand; (3) whether forum shopping would be reduced; (4) whether promotion of uniformity

in bankruptcy administration will be achieved; (5) whether there will be economical use of

resources; and (6) whether withdrawal of the reference will expedite the bankruptcy process.

These factors overlap with some of those listed in Local Bankruptcy Rule 5011-1.

### ARGUMENT

6.      Withdrawal of the reference for the Adversary Proceeding is required on both

mandatory and permissive grounds. Withdrawal is mandatory because resolution of the Trustee's

claims requires substantial consideration of ERISA law and issues at the intersection of bankruptcy

and ERISA law. Those issues include whether Matrix, in providing its custodial and clearing

services, had any alleged fiduciary duties pursuant to ERISA under the relevant plan documents

and services contracts with retirement-plan sponsors, and if so, the scope of those fiduciary duties.

Furthermore, good cause exists to withdraw the reference of the Adversary Proceeding on

permissive grounds because it consists exclusively of non-core claims—as to which Matrix is

entitled to, and demands, a jury trial—and proceedings in the District Court would promote

efficient resolution of the Trustee's claims without impairing the bankruptcy process.

**I.  The Adversary Proceeding Requires Consideration of Substantial Issues of ERISA and Bankruptcy Law, Mandating Withdrawal of the Reference.**

7.      To determine whether a proceeding qualifies for mandatory withdrawal, courts look

to three factors: "(a) whether th[e] adversary proceeding involves a substantial and material

question of both Title 11 and non-Bankruptcy Code federal law; (b) whether the non-Code federal

law has more than a *de minimis* effect on interstate commerce; and (c) whether the motion for mandatory withdrawal was timely." *In re Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992).

8.      Matrix's Motion requires consideration of only the first factor because the second and third factors are unquestionably satisfied here.  ERISA indisputably is federal law that has a substantial effect on interstate commerce; it is a "comprehensive statute for the regulation of employee benefit plans" that applies only to organizations "engaged in interstate commerce." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).  Matrix also timely submits its request to withdraw the reference; the Trustee served Matrix with his Complaint just over a month ago.

9.      As to the first mandatory-withdrawal factor, ERISA will "materially affect the disposition of" the Adversary Proceeding.  *Great W. Sugar Co. v. Interfirst Bank, Dallas, N.A.*, No. 3:85-CV-1755, 1985 WL 17671, at *2 (N.D. Tex. Nov. 7, 1985).  On the face of the Complaint, the Trustee's claims against Matrix require extensive consideration both of substantive ERISA law and ERISA-governed plan documents, as well as the relationship and duties specified in the relevant service contracts with the retirement-plan sponsors, to determine the existence and scope of any alleged fiduciary duty that Matrix had to the retirement plans and their participants.  *See id.*

10.      The Adversary Proceeding is not a case where the asserted claims involve only "rote application of the provisions of ERISA," *In re Lissner Corp.*, 115 B.R. 604, 612 (N.D. Ill. 1990), as the Bankruptcy Court concluded as to the other adversary proceeding filed in this case, *Evanston Insurance Co. v. Vantage Benefits Administrators, Inc.*, Adv. No. 19-03141 (the "Insurer Adversary").  The Insurer Adversary substantively concerns the existence and scope of coverage of certain insurance contracts for Vantage's pre-petition conduct.  The Bankruptcy Court therefore concluded that, although ERISA may have required Vantage to maintain insurance coverage, the

relevant issues in dispute "require[d] a *significant interpretation*" only of "the terms of renewal in the [insurance] Application, and possibly state contract law"—not ERISA.  Am. Report & Recommendation at 18 [Adv. DE 26], *Evanston*, Adv. No. 19-03141.  The Adversary Proceeding, however, implicates three substantive ERISA claims, at least the ERISA-law issues highlighted above, and significant consideration of the detailed terms of the ERISA-governed plan documents for the retirement plans from which the Trustee alleges the Richies stole funds.

## II.  The Adversary Proceeding Independently Merits Permissive Withdrawal.

11.     Even if the Court concludes that mandatory withdrawal is required, permissive withdrawal remains appropriate under the Fifth Circuit's *Holland* factors.

### A.  The Adversary Proceeding Asserts Exclusively Non-Core Claims.

12.     As the Trustee acknowledges, each of his claims is non-core.  Six of the Trustee's claims are garden-variety state-law claims, one for breach of contract (Count 1) and five tort claims (Counts 2–6).  The remaining three claims arise under ERISA (Counts 7–9).

13.     Courts routinely consider such claims as non-core matters that exist independently outside of bankruptcy cases and that invoke only non-bankruptcy law.  *See, e.g.*, *Green v. Bachner, Tally, Polevoy & Misher, L.L.P. (In re Green)*, 200 B.R. 296, 298 (S.D.N.Y. 1996) (ordering reference withdrawn; holding that professional negligence, breach of fiduciary, and breach of contract claims against debtor's former professional-services provider are the types of claims that "normally are deemed to be non-core"); *Butler, Snow, O'Mara, Stevens & Cannada v. Henderson (In re White)*, 172 B.R. 841, 844 (S.D. Miss. 1994) (same; holding that bankruptcy "trustee's claims for negligence, breach of contract, breach of fiduciary, and violation of [federal law] are of the type conventionally urged in the district court—where they would have been brought in the absence of the bankruptcy petitions in this case," and thus were non-core).

### B. Matrix Demands a Jury Trial.

14. Matrix asserts its right to a jury trial on each of the Trustee's claims in the Adversary Proceeding and timely indicated that it intended to do so in its Motion to Withdraw Proofs of Claim [BK DE 106], filed less than a month after Matrix was served with the Complaint. That the District Court ultimately will try this case on the merits supports withdrawal of the reference. *See, e.g.*, *In re British Am. Props. III, Ltd.*, 369 B.R. 322, 331–32 (Bankr. S.D. Tex. 2007) (applying *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 121–22 (N.D. Tex. 2006)). Moreover, per the Stipulation, the Trustee agrees that a jury trial should be held on all of his asserted claims and Matrix's defenses.

### C. Withdrawal Does Not Implicate Forum-Shopping Concerns.

15. The forum-shopping factor supports withdrawal here. Matrix moves to withdraw the reference based on the presence of substantial ERISA-law issue and its right to a jury trial, as well as the other reasons identified in this Motion. *See, e.g.*, *Manchester Inc. v. Lyle (In re Manchester)*, Adv. No. 08-03163, 2008 WL 5273289, at *3–6 (N.D. Tex. Dec. 19, 2008) (taking steps to preserve right to a jury trial does not convey an unfair "tactical advantage"). Moreover, both courts could capably decide the issues in the Adversary Proceeding and would treat the litigants impartially. "[T]here are no indicia of forum shopping present; therefore, this factor favors withdrawal of the reference." *In re British American*, 369 B.R. at 327–28.

### D. Withdrawal Does Not Impair Uniformity in Bankruptcy Administration.

16. Permitting withdrawal of this proceeding to the District Court will not disrupt uniformity in the administration of Debtor's Chapter 7 case. The docket in the Chapter 7 case reflects little activity in the two years since its inception other than the filing of proofs of claim, insurance-coverage litigation, and whether stay relief should be granted for the insurance-coverage

litigation. Only one other adversary proceeding has been filed, the Insurer Adversary, which has consumed little of the Bankruptcy Court's time other than a contested motion to withdraw the reference, which the Bankruptcy Court granted, and trial there will not occur until March 2021 at the earliest. That proceeding concerns different issues than the Adversary Proceeding against Matrix, primarily whether coverage exists under Vantage's pre-petition insurance contracts. Similarly, this Adversary Proceeding remains in its infancy and has consumed no court resources other than Matrix's requests for extensions of time to respond to the Trustee's Complaint. Under these circumstances, this factor supports withdrawing the reference. *See In re British American*, 369 B.R. at 327.

### E.  Withdrawal Promotes the Economical Use of Judicial and Party Resources.

17.     Similarly, granting Matrix's Motion will not result in the duplication or waste of judicial and party resources. The parties have not briefed dispositive motions, and Matrix has not sat on its jury-trial rights. Courts, in fact, have found this factor to weigh in favor of withdrawal of the reference even when pleading-stage motions have been filed and heard. *See id.* at 328. Here, "the parties have simply not invested significant resources in this proceeding before" the Bankruptcy Court, and the "District court would be in no better or worse position to expeditiously rule on this suit than" the Bankruptcy Court. *Id.* This factor also weighs in favor of withdrawal.

### F.  Withdrawal of the Trustee's Non-Core Claims Will Expedite the Bankruptcy Process.

18.     Withdrawal would not prevent efficient resolution of the Adversary Proceeding. Maintaining the Adversary Proceeding in the Bankruptcy Court for trial creates the possibility of three layers of judicial review: proceedings in the Bankruptcy Court followed by de novo review in the District Court and the Fifth Circuit. Withdrawal permits trial in the District Court in the first

instance, with appellate review solely in the Fifth Circuit.  This final factor weighs in favor of withdrawing the reference.  *See In re British American*, 369 B.R. at 328, 332–33.

## **PRAYER FOR RELIEF**

19.    Matrix respectfully requests that (1) the Bankruptcy Court recommend that the District Court grant this Motion and order that the Bankruptcy Court hear only pretrial matters for the Adversary Proceeding, and (2) that the District Court enter an order withdrawing the reference of the Adversary Proceeding from the Bankruptcy Court and permitting the Bankruptcy Court to hear only pretrial matters for the Adversary Proceeding, and (3) that both the Bankruptcy Court and District Court grant Matrix such other and further relief as is just and equitable.

Dated: May 20, 2020

Respectfully submitted,

By: */s/ David Weitman*
David Weitman
Texas Bar. No. 21116200
david.weitman@klgates.com
Angela Buchanan
Texas Bar No. 24059213
angela.buchanan@klgates.com
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, Texas 75201
T: (214) 939-5500
F: (214) 939-5849

Danny S. Ashby
Texas Bar No. 01370960
danny.ashby@morganlewis.com
David I. Monteiro
Texas Bar No. 24079020
david.monteiro@morganlewis.com
Justin R. Chapa
Texas Bar No. 24074019
justin.chapa@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, Texas 75201
T: (214) 466-4000
F: (214) 466-4001

*Counsel for Matrix Trust Company and*
*Matrix Settlement & Clearance Services, LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served upon all parties receiving

ECF service in this case on May 20, 2020.

*/s/ David Weitman*
David Weitman

10

## CERTIFICATE OF CONFERENCE

I certify that on several occasions between May 12 and 20, 2020, counsel for Matrix conferred with special counsel for the Trustee regarding the relief requested herein. The Trustee and Matrix subsequently entered into the Stipulation on May 20, 2020, in which the Trustee stipulated to the matters identified herein and to support withdrawing the reference of the Adversary Proceeding, as well as to such other matters set forth in the Stipulation. The Trustee has not reviewed, approved of, or agreed to the content or substance of this Motion; but, the Trustee supports the ultimate relief requested herein.

*/s/ David Weitman*
David Weitman