# **EXHIBIT H**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re:<br><br>**VANTAGE BENEFITS ADMINISTRATORS, INC.**<br><br>Debtor.<br><br>**JEFFREY MIMS, as Chapter 7 Bankruptcy Trustee of Vantage Benefits Administrators, Inc.**<br><br>*Plaintiff,*<br><br>v.<br><br>**MATRIX TRUST COMPANY, et al.,**<br><br>*Defendants,* | § § § § § § § § § § § § § § § § § § § | Case No. 18-31351-SGJ7<br>Chapter 7<br><br><br><br><br><br><br><br><br><br>Adversary Case No. 20-03055-SGJ |

## AFFIDAVIT OF GARY M. SCHWARTZ

### A. QUALIFICATIONS:

Gary M. Schwartz:

1. My name is Gary M. Schwartz, and I am over the age of 18 years, and I am fully competent to give this Affidavit/Expert Report.
2. The facts stated in this Affidavit/Expert Report are within my personal knowledge and are true and correct. I am a certified fraud examiner at Betzer Call Lausten & Schwartz LLP. I received a B.S. in Finance from the University of Colorado in 1983. In 1997, I became a certified fraud examiner. I am the president of the Colorado Chapter of the Association of Certified Fraud Examiners. I have attended various regulatory, accounting, credit, and banking seminars and courses sponsored by the Office of the Comptroller of the Currency. I developed and instructed both the OCC's National Credit School and the Post-Commissioned Credit School. I have investigated and/or testified in numerous cases similar in nature to this matter, wherein administrators divert assets from individual and group benefit plans. All of my opinions and conclusions in this Affidavit/Expert Report are based on my skill, experience, training, and education in forensic accounting, financial consulting, and litigation support, as summarized on the attached curriculum vitae.

## B. QUESTIONS PRESENTED:

Whether Matrix Trust Company's actions or inactions were customary and reasonable in its custodial capacity and failure to potentially detect the fraudulent activities of the Richies.

## C. METHODOLOGY:

As a part of my investigation of the referenced accident, I have referenced the following documents or tangible things:

1. Trustee's Third Amended Complaint filed May 19, 2021.
2. Memorandum Opinion and Order on Matrix Defendants' Motion to Dismiss: (A) Denying it as to Counts 1-3 & 6-7: (B) Granting it as to Count 4 (With Consent of Plaintiff): And (C) Granting Plaintiff 14 days' Leave to Amend as to Counts 8-10. filed May 5, 2021.
3. Caldwell and Partners, Inc. et al v. Matrix Trust Company Stipulations of Facts and Chronology.
4. Deposition transcript of Diane Hicks from July 16, 2019.
5. Deposition transcript of Diane Hicks from August 31, 2021.
6. Deposition transcript of Will Beutelschies from July 15, 2019.
7. Deposition transcript of Will Beutelschies from August 20, 2021.
8. Deposition transcript of Eric Schmitt from July 16, 2019.
9. Deposition transcript of Eric Schmitt from August 18, 2021.
10. Deposition transcript of Mary Mohr from September 22, 2021.
11. American Arbitration Association in the matter of Midlands Management v Matrix Trust Company hearing transcripts from August 5, 2019, August 6, 2019 and August 16, 2019.
12. Annual Custodial Financial Statements as of December 31, 2014; December 31, 2015; December 31, 2016; and October 27, 2017.
13. Documents provided by Counsel labeled Bates Nos. MTC_CALDWELL_004113-014, 004131-32, 004181-82, 005431-37, 005285-97, 005298-5203, 005375-70, 005728-39, 005956-64, 005444-49, 005277-84, 007330-32, and 007338-40.
14. Documents provided by Counsel labeled Bates Nos. MATRIX_MBA_004330-35, 4471-4502, 00000011, 0000027-35, 00000040-47, 00000111-113, 0000260-63, 0004670, 0004676, 0006199, 0007451, 0007517, 0007562, and 0010578-680.
15. Native format Excel file named: A – MBA Disbursement Report – Sorted.
16. Native format Excel file named: C – All Other Victims Disbursement Report – Sorted and Highlighted.
17. PDF file named: F – Caldwell Custodial Account Agreement. TRUSTEE'S APPX 035 Case 20-03055-sgj Doc 213-3 Filed 05/02/24 Entered 05/02/24 18:19:54 Desc Exhibit Exhibit E Page 25 of 26
18. MBA financial statement provided by Vantage for the periods October 1, 2015 through December 31, 2015, and April 1, 2016 through June 30, 2016.
19. Demographic, historical and financial information on Matrix Trust Company available at https://www.ffiec.gov/NPW.

## D. DEFINITIONS:

1. "Plan Victims" refers to employee benefit plans from which the Richie's illegally transferred funds to their bank accounts.
2. "MTC" refers to Matrix Trust Company, which administered the custodial accounts that held the employee benefit plans.
3. "CAAs" means custodial account agreements.
4. "Vantage" refers to Vantage Benefits Administrators, Inc.
5. "TPA" means third-party administrator.
6. "CFS" refers to Custodial Financial Statements.

### E. CONCLUSIONS AND OPINIONS

Based upon the information available and reviewed, it is my opinion that:

1. Based on my experience in the banking and trust industries the Plan Victims were customers of MTC.
2. MTC did not comply with customary standards and practices in the banking industry in its failure to secure executed CAAs for all Plan Victims. It is very concerning that such a key document as a CAA in defining the contractual relationship among the custodian, plan, and TPA would be missing for so many accounts, while MTC continued executing trades and processing distributions.
3. In my opinion, MTC's actions and inactions in processing transactions and disbursements without having secured all required agreements is contrary to reasonable and customary practices in the banking industry and is improper.
4. MTC did not comply with customary standards and practices in the banking industry when they failed to establish sufficient internal controls, including exception reports and reviews of irregular or unusual transactions. Two high level MTC executives agreed that the nature of the transactions initiated by Vantage were unusual/uncommon, and yet there was no testimony nor internal control procedures that would flag such transactions for review.
5. Having a highly automated system does not relieve the institution from its duties of exercising ordinary care in implementing sufficient processes and internal controls to reasonably protect the assets of its customers.
6. MTC did not comply with customary standards and practices in the banking industry in allowing the Richie's to "toggle off" required IRS Form 1099 reporting without proper controls.
7. MTC did not comply with customary standards and practices in the banking industry when they failed to incorporate such controls as automatically sending or otherwise notifying or making available quarterly and/or annual CFS to the Plan Victims.
8. I reviewed the CFS and tied the illegal disbursements to the previously referenced Excel spreadsheet named: A – MBA Disbursement Report – Sorted. The Richie's created falsified financial statements that were in turn provided to Plan Victims, but MTC did not provide statements to the Plan Victims which would have revealed the unauthorized and illegal distributions.
9. Such bad acts are not an uncommon occurrence and as such custodians are expected to implement all reasonable controls to lessen the risk of fraud.

10. It is reasonable to think that the Plan Victims would have identified the discrepancies at an earlier date had MTC simply provided plans with quarterly CFS, or any of the other items discussed elsewhere in this report.
11. For more details, please see my attached report.

**FURTHER AFFIANT SAYETH NOT.**

X _____
Gary M. Schwartz